## Brown *versus* Commonwealth.

1. On a challenge to the polls of grand jurors the defendant cannot examine the jurors on their *voir dire* as to the alleged cause of challenge; but may establish it by evidence *aliunde.*

2. A bill may be sent to the grand jury by the district attorney, with the sanction of the court, without previous binding over.

3. After exhausting the regular panel, a venire for talesmen generally, authorizes the selection of jurors from the county at large as well as from bystanders.

4. When two persons are murdered at the same time and place, under circumstances evidencing that both murders were committed by the same person, and were part of the same transaction, &c., evidence as to the circumstances of the murder of one is admissible on the trial for the murder of the other.

5. On a trial for murder, there was evidence that the defendant had in his possession coin at a time when specie payments were suspended; that the murdered man was living in a place where there was no safe deposit for money; under these circumstances evidence was admissible that the murdered man had received a quantity of coin, although several years before.

6. In order to establish identity, evidence that the witness gave testimony in a prosecution against prisoner for another murder, and that he recognised him as the person from whom he purchased coin the morning after the murder, was properly admitted without producing the record of the prosecution.

7. A prisoner confined in the jail with the defendant, testified that he held a conversation with the defendant through the soil-pipes, in which defendant confessed his guilt, and that the witness knew it was the defendant from his voice. *Held,* that the testimony was admissible; its weight was for the jury.

8. The court charged the jury, that they might acquit the prisoner or find him guilty of murder in the first or second degree, and state the degree in their verdict. *Held,* that it was not error to omit instructing the jury on the subject of manslaughter, no instruction having been asked as to that.

9. It is not error in the court to omit instructing a jury on the abstract principle, that on an indictment for murder, there may be a conviction for manslaughter.

10. McCullough *v.* Commonwealth, 17 P. F. Smith 30, followed.

May 27th 1874, at Harrisburg. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Criminal Court of *Schuylkill county*: No. 226, to January Term 1874.

At the April Term 1872, of the Criminal Court of Schuylkill county, two indictments were found against Joseph Brown; one for the murder of Daniel S. Kraemer, and the other for the murder of Annetta Kraemer his wife. He was tried at the August Term 1872 on the indictment for the murder of the husband, was found guilty of murder in the first degree, and sentenced to be hung. The record was removed to the Supreme Court by writ of error, and the judgment there reversed; one of the grounds of the reversal being that the grand jurors who found the indictments had not been properly selected: 23 P. F. Smith 321.

[Brown *v.* Commonwealth.]

At July Term 1873, the district attorney sent a new bill to the grand jury; it was returned a true bill. The case was continued, on the application of the defendant, until October Term 1873. The trial commenced October 28th 1873, before Green, P. J., and on the 15th of November, the jury found the defendant guilty of murder in the first degree. He was sentenced to be hung and took out this writ of error.

The proceedings, evidence, &c., are not contained in the paper-book, except as they appear in the assignments of error, which will sufficiently elucidate the questions decided in the Supreme Court.

The specifications of error were not passed upon in the opinion of the Supreme Court in their numerical order, but were grouped together when relating to one general subject; they are here stated in the same order.

The 1st and 8th assignments of error were upon the defendant's separate motions to quash the array of grand and petit jurors respectively, because the venire was issued by C. F. Rahn, as clerk of the Criminal Court of Schuylkill county, an office to which he was not elected nor commissioned, and had not given security and been qualified, because the prothonotary and clerks of the courts had not certified to the sheriff and jury commissioners, at the end of each term, the names of jurors making default or excused; and that the sheriff and jury commissioners had not returned such names to the jury-wheel when the present panel was drawn; and because the jury-wheel was not secured according to law; had been unlocked in the absence of the sheriff and not locked and sealed as required by law.

The district attorney traversed directly all the allegations set forth as reasons for the quashing the arrays.

The court overruled the motions to quash and sealed several bills of exception.

2d, 3d, 4th and 5th assignments: The defendant, July 7th 1873, challenged to the polls for favor, certain grand jurors named by him, and moved to show cause, before the grand jury should be sworn, why the persons named should not be excluded from passing upon the charge against the defendant, they not standing indifferent, and that he be permitted to prove this on the *voir dire* of the grand jurors or by any other kind of competent testimony.

The court below, on this motion, ruled that the defendant might prove the facts alleged in his motion as a cause of challenge, but would not permit him to examine a grand juror on his *voir dire* to prove the cause of challenge assigned against him, and sealed several bills of exception.

6th assignment. After the indictment was found, the defendant moved to quash it because it had been "sent to the grand jury by

[Brown v. Commonwealth.]

the district attorney without previous prosecution, hearing or binding over."

The court overruled the motion and sealed a bill of exceptions.

10th assignment. The regular panel of jurors having been exhausted, the court ordered "that a *tales de circumstantibus* do issue for one hundred talesmen, returnable to-morrow morning," &c.

The defendant moved to quash the panel returned because " the jurors summoned and returned are not *de circumstantibus*, but of the county at large, having been summoned from various places in said county."

The court overruled the motion and sealed a bill of exceptions.

14th and 15th assignments were to the admission of the following offers of evidence:—

" The Commonwealth proposes to prove by Daniel M. Kraemer, a son of the deceased, that upon Monday morning, between the hours of eight and nine o'clock, in going from his mother's house to the house of John Adam Brown, a near neighbor, for the purpose of giving an alarm, he found the body of his father lying dead in the lane, about two hundred yards from the house, to be followed by evidence that the chest, bureau and desk at the house had been broken open; to show that the motive of the murder was robbery, and the death of Daniel S. Kraemer was an incident in the accomplishment of this object, and as a fact and circumstance descriptive of the manner in which the murder of Annetta Kraemer was accomplished."

" The defendant does not object to any evidence as to the condition of the chests or furniture in the house, but objects to all the other portions of the offer.

" 1. The finding of Daniel S. Kraemer dead some two hundred yards from the house is a circumstance which does not throw any light upon the charge for which defendant is now being tried.

" 2. The defendant is under indictment for the killing of Daniel S. Kraemer; it is in fact and has been treated by the Commonwealth as an independent affair, and defendant objects to being tried for killing Mrs. Kraemer, and convicted of killing Daniel S. Kraemer.

" 3. It does not appear in the offer that the facts proposed prove or tend to prove the motives alleged in the offer."

" The Commonwealth proposes to prove by the witness Daniel M. Kraemer and others, that he and they made an examination of the body of Daniel S. Kraemer, found by his son, the witness, on the morning of the 25th of February 1872, and also the result of said examinations as to the nature and character of the wounds found upon his person, the condition of his clothing and general appearance. This to be followed by evidence of the admission of the prisoner that he killed Daniel S. Kraemer, and also to be followed by evidence that there was a large amount of silver and gold

26 P. F. Smith—21

[Brown *v.* Commonwealth.]

coin in the house of said Daniel S. Kraemer, which fact was known to the prisoner. This for the purpose of showing motive on the part of the prisoner in the murder of Annetta Kraemer at the house where such coin was kept."

" The defendant objects that the offer is indefinite, and does not state what facts are to be proved as to the nature and character of wounds found on Kraemer, nor whether his death was the result of injuries or natural causes.

" The defendant's admissions in respect to Kraemer are immaterial in this case, and no more evidence in this case than the dying declarations of Mrs. Kraemer would be in a trial of defendant for killing Kraemer.

" The offer to prove that Kraemer had in his house gold and silver is immaterial, and does not prove any material matter in this case.

" The matter stated in the offer does not tend to prove any motive for killing Mrs. Kraemer."

The court admitted the offers, and sealed several bills of exception.

The 16th, 18th, 19th, 21st, 22d, 24th, 25th, 26th and 34th assignments were to the decisions of the court on the following offers of evidence :—

" The Commonwealth proposes to prove by the witness Daniel M. Kraemer, that within two years prior to the 25th of February 1872, he saw a large quantity of gold and silver coin in his father's house; to be followed by evidence that about one year prior to the said date, five hundred dollars in gold and a large quantity of silver coin was in the house, and that immediately after the death of Daniel S. Kraemer and prior to the death of Annetta Kraemer, but after she had received the injuries which resulted in her death, the prisoner had in his possession a large quantity of silver coin, which he admitted that he had taken from Kraemer's house. This on the question of motive for the murder of Annetta Kraemer."

" The defendant objects that the proof of gold and silver in the house of Kraemer one or two years before the 25th of February 1872, is too remote, and therefore irrelevant; that there is no legal presumption that he had such gold and silver in his possession February 25th 1872.

" That as it is not claimed that any of Kraemer's gold and silver was taken at the time the offence was committed, nor at any other time, the offer is irrelevant.

" If all the offer contains be true, the facts do not prove a legal inference that the prisoner committed the crime charged against him.

" It is not proposed to prove that the gold and silver witness saw was the property of Kraemer or even in his possession."

" The Commonwealth proposes to prove by the witness that her

[Brown v. Commonwealth.]

father, John Machmer, at his death, left a large amount of gold and silver coin; that this coin was distributed by his legal representative among the heirs; that witness was present when the share of Annetta Kraemer, one of the heirs, was paid to her; that the said John Machmer died about four years prior to the death of Annetta Kraemer, and this distribution was made some time subsequent to his (Machmer's) death; to be followed by evidence that said coin was kept in the house of Kraemer from the time it was paid until the 25th of February 1872; and also to be followed by evidence that Joseph Brown, the prisoner, had in his possession on the 26th day of February 1872, a large quantity of silver coin, which he admitted he had taken from the house of Kraemer on the night of the 25th of February 1872. This for the purpose of showing the prisoner's motive and presence at Kraemer's on the night of the 25th of February 1872."

" The defendant objects that the witness has stated at least four times that she did not see or know of any money in Kraemer's possession within two years of the death of Mrs. Kraemer, and that her sister got her inheritance some years ago, but that she did not know where it was kept, nor whether she had it or any of it at her death. The facts proposed are immaterial, and the evidence of Mrs. Kraemer's receipt of money too remote as to time to raise any presumption; that in a murder trial the Commonwealth should prove the loss of coin from Kraemer's house and the possession of it by the defendant before they show that it was the property of Kraemer or his wife."

" The Commonwealth proposes to prove by the witness David Machmer, that he, as executor of his father's estate, paid to Annetta Kraemer, one of the heirs of said estate, a large amount of gold and silver coin (about two months after the death of John Machmer, who died in August 1867), prior to death of said Annetta Kraemer. To be followed by evidence that Joseph Brown, the prisoner, had in his possession immediately after the injuries as aforesaid were inflicted upon Annetta Kraemer, a large quantity of silver coin, which he admitted he got at the house of Daniel S. Kraemer on the night of February 25th 1872, the time when said injuries were inflicted. This on the question of motive for the commission of the murder of said Annetta Kraemer."

" The defendant objects to all that part of the offer which relates to payments by Machmer, the witness, to Mrs. Kraemer, as too remote and under the offer too irrelevant."

" The Commonwealth proposes to ask the witness on the stand, whether a young man came into his, witness's place of business, on Monday February 26th 1872, and sold there a quantity of silver coin, and if so, the time of day and how the person was dressed, it having been already proved that the prisoner, Joseph Brown, was in Pottsville about the time it is proposed to prove the silver

[Brown *v.* Commonwealth.]

was sold and that the person who sold it was dressed in the same manner as Brown. This as evidence to be submitted and passed upon by the jury on the question of the identity of the prisoner as the person who sold the silver as aforesaid."

" The defendant objects that the prisoner has stood up before the witness on the stand, and the witness having stated that he cannot say that he ever saw the prisoner before, and that he cannot recognise him, the question proposed is not admissible. The Commonwealth are bound to remove all doubt about the identity of the person who, if any, sold the silver, and cannot ask the jury to guess that a person, though he may have been dressed similar to the prisoner, might have been the prisoner."

" The court permits the Commonwealth to prove facts such as point to the identification of the prisoner, as description of dress, &c., and then to prove the facts proposed to be proved as to the silver."

" Commonwealth proposes to ask the witness whether he learned there the name of the person whom he recognised at the time."

" Defendant objects to it unless he learned it from the defendant himself."

" The Commonwealth having already proved that Joseph Brown, the prisoner, was in the borough of Pottsville, on Monday morning, the 26th of February 1872; that he was dressed in a blue army overcoat and had a black slouched hat on; that he offered to Charles Kantner silver coin for sale; that he sold gold and silver coin to H. H. Huntzinger; now proposes to prove by the witness on the stand that he purchased old silver coin upon the same morning, and about the same hour, from a person of the height of the prisoner, dressed in a blue army overcoat and black slouched hat. This for the purpose of being submitted to the jury on the question of the identity of the person selling the coin with the prisoner, and to be followed by evidence of the admission of the prisoner that he had silver coin in his possession, which he took from Kraemer's house on the night Annetta Kraemer received the injuries of which she subsequently died."

" The defendant objects that the matters proposed to be proved are irrelevant; that this evidence does not propose to prove that the prisoner sold any silver to the witness at the time and place stated in the offer. The purchase of silver of a person the height of prisoner, dressed in a blue army overcoat and slouched hat, does not support the issue in this case. The purpose of the evidence set forth in the offer is not material in this case. If the witness cannot identify the person from whom he bought silver coin, it is illegal to submit the question of identity to the jury, whose means of identification are much less than the witness, and therefore less competent to judge who sold the silver than the witness."

[Brown *v.* Commonwealth.]

" The Commonwealth proposes to prove by the witness on the stand, Meyer Kuhn, that on the 26th day of February 1872, about nine o'clock in the morning, the prisoner, Joseph Brown, bought of the witness a suit of clothes and handkerchief. This for the purpose of proving the possession of money by the prisoner at said time, it having already been proved by the Commonwealth that the prisoner exchanged silver coin upon the morning in question for paper-money ; to be followed by evidence of the admission of the prisoner that he took silver money from the house of Kraemer on the night Annetta Kraemer received the injuries of which she subsequently died. This to be submitted to the jury to be passed upon by them as to whether the paper-money paid to witness was not the money received in exchange for the coin as aforesaid, the money taken by the prisoner in the perpetration of the murder of Annetta Kraemer. It having already been proved that the prisoner had not received any money for his labor, for the work done by him for weeks prior to the murder of Annetta Kraemer, and to be followed by evidence that the prisoner had received but little money for a long time prior to said 26th of February 1872."

" The defendant objects that it is immaterial what he did with the money for which Commonwealth alleges he exchanged silver. The proposed evidence is irrelevant. The object proposed to be proved by this offer is immaterial. The purchase of the clothes was after the commission of the alleged crime, and has no connection therewith. It is not alleged that prisoner took any paper-money from the house of Kraemer, and the payment of paper-money by him cannot be material."

" The Commonwealth proposes to prove by George Worcester, the witness, that on Monday, the 26th day of February 1872, about noon, the prisoner left with him, at his eating-saloon at Auburn, an oil-skin bag containing a suit of clothing, hat, necktie and suspenders, and that at the same time he bought ale in this saloon for himself and one Raush. This on the question of the expenditure and possession of money and property in unusual amounts by the prisoner immediately after the infliction of injuries upon the person of Annetta Kraemer, of which she subsequently died, and to be submitted to the jury upon the question of preparation for flight, to be followed by evidence of the confession of the prisoner that he took the silver money from the house of Kraemer on the night of the 25th February 1872."

" The defendant objects that the evidence proposed in this offer is irrelevant."

" The Commonwealth proposes to prove by the witness on the stand that she was present when a tin box, containing silver coin, was found on the 10th of June 1872, in the barn of the father of the prisoner with whom he resides ; that this money was found in

Brown *v.* Commonwealth.]

a place which evinced secrecy. The Commonwealth having already established this as the place of concealment of money, which the defendant confessed he got from Kraemer's on the night the injuries were inflicted of which Annetta Kraemer died. This for the purpose of showing the prisoner's presence at Kraemer's on the night of the murder, and the motive for the crime."

"Defendant objects: that the testimony offered is too remote; that the Commonwealth does not propose to identify the money found June 10th with any money ever in Kraemer's possession."

The court admitted these offers of evidence and sealed several bills of exception.

23d assignment. "The Commonwealth proposes to prove by the witness upon the stand that he gave testimony in a prosecution between the Commonwealth and Joseph Brown, upon a charge of the murder of Daniel S. Kraemer, and that he recognises the defendant in that prosecution as the person from whom he purchased silver coin on Monday morning, after the killing of Daniel S. Kraemer, to be followed by evidence that the defendant in that prosecution is the same person as the prisoner at the bar."

"The defendant objects that the only evidence of the proposed prosecution is the record thereof, which is not evidence in this case; also, to any parol evidence of the prosecution proposed in this offer as immaterial, and not the best evidence which the nature of the case is susceptible of, that evidence of another prosecution, as proposed, tends to the injury and prejudice of the prisoner before the jury."

The court admitted the evidence offered and sealed a bill of exceptions.

28th, 29th and 30th assignments:—

"The Commonwealth proposes to prove by the witness John J. Kaercher, that he assisted Ewing, the constable, in making the arrest of Joseph Brown, the prisoner, what conversation took place between himself and the prisoner from the time of such arrest until they arrived at Pottsville, for the purpose of showing by such conversation that the prisoner admitted his presence at the house of Kraemer on the night and at the time the injuries were inflicted upon Annetta Kraemer which caused her death, and also his admission that he took money from the premises."

"The defendant objects that the above offer is indefinite and does not set forth the conversations proposed to be proved, so as to show their relevancy."

"The defendant proposes and now asks the court to order the witness to stand aside for the present, and that the jury be withdrawn from the court-room, to allow him to offer proof and show that any conversations he may have had with the witness, and any confessions he may have made to witness, were not volun-

[Brown *v*. Commonwealth.]

tary, but extracted from him while under arrest and charged with homicide, by promises of hope held out to him and by threats and appeals to his fears.   The defendant further objects to the conversations not set forth as irrelevant."

" The court, before ruling upon the offer of evidence made by the Commonwealth and objected to by the defendant, will permit evidence to be given to the court to show that the conversations referred to in the offer were not voluntary, and made under such circumstances that they ought to be rejected as evidence; and further direct that, pending the decision of the question, the court will comply with the defendant's request that the jury retire."

" Commonwealth offers as witness John J. Kaercher, to show that he offered no inducement, and that these confessions and statements were not made either by exciting hope or fear in the mind of the prisoner, and also for the purpose of contradicting F. W. Bechtel, a witness produced by the defendant, as to statements made to him by Kaercher."

" The defendant objected that he having shown by evidence of witnesses that the declarations and confessions were obtained by threats, and by exciting hopes in the prisoner, the witness Kaercher is not competent to qualify himself to testify by his own testimony, and for the additional reason that the Commonwealth have put in evidence Ewing's testimony to prove inducements to confess, and they cannot contradict that evidence, as they now propose to do. The prisoner, under the evidence that has been submitted upon the preliminary question as to the proof of confessions by him, requests the court to rule that, under all the evidence that has been submitted to the court upon the question, the confessions proposed to be put in evidence are inadmissible."

" The Commonwealth objects to the above objection, for the reason that under the preliminary testimony, and after the same had been offered, passed upon by the court, the Commonwealth offered the witness who had received the alleged admissions or confessions from the prisoner, to which offer the defendant excepted and has the full benefit, and the Commonwealth object because the prisoner has already excepted to the testimony."

" The court, after hearing the testimony of the witness, decides to admit the evidence of Joseph J. Kaercher, as to the conversaons referred to in the offer of the Commonwealth, and declines, by reason of the conflict of testimony, to rule that, under all the evidence in the case, the confessions are inadmissible, but will refer the question of fact to the jury to determine as to the circumstances under which said conversations took place, under such evidence as may be produced."

Several bills of exception were sealed by the court.

31st, 32d and 33d assignments :—

" The Commonwealth proposes to prove by Joseph Trumbo, the

witness upon the stand, confessions made by the prisoner within his hearing as to the prisoner's participation in the robbery of the Kraemers, husband and wife, and his presence at the house upon the night when the injuries were inflicted upon Annetta Kraemer, of which she subsequently died."

" The defendant objects that the offer does not set forth what the confessions are, and therefore defendant cannot say whether or not they are material. He therefore prays the court for a more specific offer. The testimony of the above witness has been taken on a former trial, and it appeared then that the alleged conversations between witness and defendant were carried on, not in the presence of each other, but through the water-pipes in the county prison, and that the witness did not see the defendant, and had no other means of recognition of defendant than his voice. If this offer refers to such conversation, defendant prays that it may appear in the offer, that he may have an opportunity to object. As this offer refers neither to time, place nor other circumstance, defendant is deprived of any objection, except it be founded upon an assumption that may or may not be true. Defendant therefore, being unable to determine from the character of the offer what objection to make, prays the court to reject this offer and require the Commonwealth to specify with more certainty the confessions and other matters which they propose to prove."

" Commonwealth proposes to prove by the witness on the stand that he was confined in the Schuylkill county prison; that a short time after the arrest and imprisonment of Brown, the defendant, the witness had a conversation with Brown through the pipes of the water-closets in the prison; that in the conversation thus conducted the prisoner admitted his participation in the murder of Annetta Kraemer, and that robbery was the object of such murder; that the witness did not see the prisoner, but recognised him by his voice alone; to be followed by evidence that conversations can be held as proposed to be proved by the witness, perfectly distinct and audible; it having already been proved by the Commonwealth that the witness was a companion and familiar with the voice of the prisoner Brown."

" The defendant objects to this offer of evidence :—

" The witness has already stated that he did not see Brown; that he did not know what cell he occupied, but that he was back in the far end of the prison, while the witness was near the front end, with a number of cells intervening; that his only means of knowing Brown was by his voice. The defendant objects that the witness could not know who he was talking with, and his opinion as to whose voice he recognised is not admissible."

" Commonwealth proposes to ask how the witness knew that Brown was in prison, having stated that he, Trumbo, called to him

[Brown v. Commonwealth.]

through the pipes; to be followed by evidence that Brown was in prison at that time."

." Defendant objects, unless he saw the prisoner, or had actual personal knowledge of his being there."

The offers were admitted and several bills of exception sealed.

35th, 36th and 37th assignments:—

" The Commonwealth proposes to prove by the witness upon the stand and others, the declaration of Annetta Kraemer as to how she received the injuries of which she subsequently died, to wit, upon Sunday, the 4th day of March 1872, and who inflicted said injuries; it having been already proved that the said Annetta Kraemer was fully conscious of her approaching dissolution at the time said declaration was made. This for the purpose of proving that Joseph Brown, the defendant, inflicted the blows which resulted in her death."

" The defendant objects that no sufficient evidence has been given to authorize her declarations to be given in evidence. The offer does not state what declarations of Mrs. Kraemer the Commonwealth propose to prove; whether they will prove anything against the defendant, he cannot know from the offer.

" The defendant objects to any conversations between Mrs. Fehr and Fertig and Mrs. Kraemer, inasmuch as they, Fertig and Mrs. Fehr, have already sworn that Mrs. Kraemer did not make any dying declarations to them under a belief of impending immediate dissolution. The most she is proved to have said to them (on Tuesday, when they conversed with her), was that she had great pain, and that she would die, unless there was a change in a day or two. If the Commonwealth propose to prove dying declarations by any other witnesses than those mentioned in these objections, defendant objects until ground shall be laid for their introduction.

"It is further objected to this offer that it does not state at what time during the illness of Mrs. Kraemer her declarations were made."

" The Commonwealth proposes to prove by the witness, the Commonwealth having already proved that Annetta Kraemer was conscious of her approaching dissolution at the time said declarations were made to the witness, that Joseph Brown, the prisoner, was present, and he alone was with her at the time she received the injuries of which she subsequently died. This to prove the presence of the prisoner at the time and place when said injuries were inflicted."

" The defendant objects that the witness had already stated that he did not hold any conversation with Mrs. Kraemer after Tuesday the 27th of February, upon the subject of this offer, and he denies that there is any evidence in this case that deceased was conscious of her approaching dissolution on that day. Dying declarations are only evidence of the circumstances which cause

[Brown *v.* Commonwealth.]

death, and as the witness has twice answered that she, Mrs. Krae-
mer, never said anything to him as to when or how she received
her injuries, any statements of hers, such as Commonwealth pro-
poses to prove, are not competent as dying declarations."

"Commonwealth proposes to ask witness what Mrs. Kraemer
said as to how and when her injuries were inflicted, all she said
upon the subject, it having been already established by the testi-
mony of this witness that the declarant was conscious of approach-
ing dissolution."

"Defendant objects that they have laid no ground to prove
dying declarations by this witness."

The court admitted these offers and sealed several bills of ex-
ception.

The court charged:— * * *

"The prisoner is charged with the highest crime known to the
law — treason alone excepted — that of murder. Murder at the
common law is defined to be ' the felonious killing of another with
malice aforethought, either express or implied.' In order to con-
stitute the killing a murder it must be done with malice, and that
constitutes a necessary ingredient.

"When that ingredient is wanting, the offence becomes reduced
to a less degree of crime, either voluntary or involuntary man-
slaughter; or if the killing is not unlawful, to excusable or justifi-
able homicide. It becomes then of importance for the jury to de-
termine what this malice is that constitutes a felonious killing
murder. It is of two kinds—express malice or implied malice.
It is express when the killing is the result of personal ill-feeling
and hatred or enmity towards the party killed. Implied when the
killing takes place under such circumstances of atrocity that show
a wicked and malicious disposition in the perpetrator, a heart
wicked and depraved, bent upon mischief and void of social duty,
as for instance, when the killing shows that it was done out of pure
wantonness or recklessness, or that there was an absence of suffi-
cient provocation [or it was done in the perpetration of some felony,
in such case the law implies malice and the killing is murder.
Manslaughter is defined to be the felonious killing of another with-
out malice, either express or implied, and is of two kinds, volun-
tary and involuntary. Voluntary, as when one in the heat of
passion, excited by reasonable provocation, kills another, and in-
voluntary, when one in the perpetration of some unlawful act, not
amounting to a felony, or the perpetration of a lawful act in an
unlawful way by accident kills another.] In both kinds of man-
slaughter it will be readily seen that the malice which constitutes
the essential element of murder is wanting. These are the dis-
tinctions which are made by the common law in all cases of felo-
nious homicide, and there is a broad line of demarcation between

each grade of offence depending upon its greater or less degree of heinousness.

"But in Pennsylvania the law makes an additional distinction; it divides murder into two degrees—murder in the first, and murder in the second degree, both degrees still preserving the essential element which distinguishes murder from manslaughter, to wit: malice. The statute of this state upon this subject reads as follows: 'All murder which shall be perpetrated by means of poison or by lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration of or the attempt to perpetrate any arson, rape, robbery or burglary, shall be deeemed murder in the first degree, and all other kinds of murder shall be deemed murder in the second degree.' Therefore, before a jury could convict of murder in the first degree, they must first be satisfied from the evidence in the cause that the killing was done either by poison, or by lying in wait, or was done wilfully, deliberately and premeditatedly, or in perpetration of or attempt to perpetrate any of the felonies mentioned in this statute. Even if the circumstances of the killing should show that it was not done deliberately and premeditatedly, yet if it were done either in the perpetration of or attempt to perpetrate any of the felonies mentioned, the party would be guilty of murder in the first degree, for he would come within the very words of the statute. If the jury should be satisfied not only that the killing was thus done, but that it was also done with deliberation and premeditation, the offence would come doubly under the description of murder in the first degree, as defined in the statute, and the party might be considered in a sense as doubly guilty. The statute of Pennsylvania defines murder in the second degree in no other way than by saying that all murder which is not murder in the first degree is murder in the second degree. Therefore, while in murder in the second degree there is still the ingredient of malice as we have before explained; it either lacks the combined elements of wilfulness, deliberation and premeditation, or else was not done in the perpetration of or attempt to perpetrate any of the felonies mentioned. Murder in the second degree, while not perhaps capable of precise definition, may be said to be a felonious, malicious killing, in which the specific intent to take life is wanting. Then the deliberate, premeditated intention is not present, but the malice is, as when a person out of ill-will, not intending to kill, but only to inflict bodily harm, should kill another, here the intention to kill being wanting, the offence is reduced to murder in the second degree, and the malice or ill-will being present, constitutes the crime murder instead of manslaughter.

"This is a general view of the different grades of unlawful homicide as laid down by the law of Pennsylvania, and to apply it to the facts of the present case, we say to you that if Annetta

[Brown *v.* Commonwealth]

Kraemer was killed by some one whilst engaged in the perpetration of or an attempt to p  petrate either a robbery or a burglary, that then the party would be guilty of murder in the first degree. If she had been killed by some one wilfully, premeditatedly and deliberately, this would likewise constitute murder in the first degree. The offence would be reduced to murder in the second degree, if there were an absence of proof that it was done in the perpetration of one of the felonies named or that it was done wilfully, deliberately and premeditatedly, or if the evidence should show that the design of the person in inflicting the injuries was not to take life, but only to inflict bodily harm. In these cases, if the malice was still present, the offence would be murder in the second degree. [If the jury should be satisfied, under the evidence in the case, that Annetta Kraemer lost her life at the hands of some one whilst in the act of robbing the house, or for.the purpose of robbing the house, this would be murder in the first degree, and the guilty party should be convicted of such a degree of crime.]

    \*        \*        \*        \*        \*

"It is of importance that you determine what was the situation of the house and furniture upon Monday morning, for the purpose of determining two facts which are alleged by the Commonwealth. First [whether the motive which led to the killing of Mrs. Kraemer was robbery]; and second, whether there was actually a robbery committed. If the jury should find that robbery was the motive which led to the killing, and that it was in the perpetration of this that the killing took place, that would determine the degree of guilt of the party; and if the jury should find that a robbery had actually taken place there, it would aid in determining the investigations of the jury as to the party who was concerned therein, and by consequence of the party who inflicted those injuries upon Mrs. Kraemer. \* \* \*

"Under the evidence in this case, then, it is for the jury to determine the motive which led to this killing. It is for you to say whether there is or can be any reasonable doubt upon that subject. [Can any reasonable hypothesis be made to show any other motive for the act but the intention to rob the house?] The Commonwealth claims that it is not possible to frame any other reasonable hypothesis than that the killing was for the purpose of robbery, and that all the evidence points to that, and to that alone.

"Under the facts of the case, the jury can probably have but little doubt as to the motive which led to the killing of Mrs. Kraemer. If they should determine that robbery was the object, and that the killing took place in the carrying out of that object, then the party who committed this deed would be guilty of murder in the first degree, and the jury should not hesitate to say so. The jury will understand that they are the judges of the facts of a case. We cannot dictate to them the view they shall take of them. They

[Brown *v*. Commonwealth.]

may believe this witness; they may discredit that one; they may place reliance upon this piece of testimony; they may reject that one. They are only bound by the oaths they have taken to render their verdict according to the evidence. A court may lay down its opinion upon the facts of a case in the most unequivocal terms, but the jury would not be bound by them. It is the duty of the court to lay down the law of the case, and the jury will apply the law as the court lays it down to the facts of the case as they shall find them from the evidence, and render their verdict accordingly.

"This brings us to the consideration of what is perhaps the main question in this case, and that is, who inflicted the blows upon the person of Mrs. Annetta Kraemer, from the effect of which she died? Was it the defendant, or was it some one else unknown to the jury? * * *

"As to the confessions made to Kaercher and Ewing, the defendant claims that the jury ought not to regard them because they were elicited by a promise of favor held out by Kaercher, the constable. The Commonwealth denies that any promise was held out, or any threat made at the time, to induce the defendant to make a confession. The rule of law is this: That if the confession is voluntary, not drawn out either by the influence of hope or fear held out to him, then it is properly in evidence, and its weight and importance to be considered by the jury. But if the confession is not voluntary, but has been drawn out either by the hope of favor or forced out by threats, then it is to be entirely rejected. The law does not permit confessions extracted in such a way to be given in evidence, for fear that, not being voluntary, they are untrue, and for the purpose of discouraging attempts at entrapping defendants into admissions of their own guilt. [We therefore call your attention to the evidence as to the fact whether these confessions were voluntary or not.] You have the testimony of the two witnesses who were present, as to what was said by way of evidence at the time the alleged confession to Kaercher was made. This is the testimony of Kaercher himself and the testimony of Ewing. Kaercher swears that he did not say to the prisoner that he had better tell, and words to that effect; that he had only told him he might as well tell now as any other time, and that he had been cautioned by Ewing in the presence of Brown that he should make no promises and hold out no inducements to the prisoner. Ewing's testimony corroborates Kaercher's in this, that he told Kaercher in Brown's presence that he should make no promises. [If the jury should find that the expressions used were as Kaercher swears they were, or that, by reason of the caution given by Ewing, that the effect of any promise or threats was done away with in the mind of the defendant, then we think the confession of Brown was properly received in evidence, and should be given that weight with the jury to which they may think it entitled.] But

[Brown *v.* Commonwealth.]

if, on the other hand, the jury should think that this was not the true state of the case, but that the defendant was told that it would be better for him to tell whose money it was, or who was along with him, or that he was told that he had better tell whose money it was, and who popped the old man over, and that he might get off, or they would let him go clear, as Mr. Bechtel swears Kaercher told him he had said to the prisoner, then we say to the jury that they are to disregard and throw entirely out of consideration any confessions so elicited by the flattery of hope held out to the defendant, except so much as may have been said by the defendant before the promise was held out to him, and also except as to that part of his confession which revealed the hidden place of the money over the door in his father's barn, and which was found there by the officers in consequence of this confession. If, however, the jury should come to the conclusion that this confession was not elicited by any inducement or promises so held out, then it is properly to be considered by them as part of the evidence in the case. The Commonwealth does not claim that these declarations in confessions are true; on the contrary, they have produced witnesses here to prove their falsity in many particulars. [We are free to say to the jury that, had the evidence been clear that these declarations had been so elicited, either by promises held out or by threats made, we should have ruled them out, and not have permitted them to go to the jury as part of the evidence in the case. The jury must judge in the midst of the conflict of testimony from all the evidence in the case, whether the declarations to Ewing and Kaercher were voluntary or not. If not voluntary, as we have before explained them, they should not be considered by the jury as part of the evidence in case.] * * *

"It is always to be borne in mind that when a party is charged with a crime the burden is upon the Commonwealth to prove him guilty. If the Commonwealth fails in this, then the defendant is entitled to a verdict of· acquittal, for the presumption of innocence surrounds him until he is stripped of it by the evidence produced against him. It must further be borne in mind by the jury that the Commonwealth must prove him guilty beyond any reasonable doubt. If from the facts in evidence such doubt arise as to the guilt of the defendant, then the jury must give him the benefit of that doubt. The law does not seek the conviction of any person who may be innocent, and therefore it says if there is a reasonable doubt as to his guilt, then the jury must acquit. This doubt should be such an one as grows out of the facts and circumstances of the case; such an one as causes the mind honestly to hesitate in its belief in the guilt of a party. [There is but one count in the indictment, and that is a count for murder; the jury under that count may either acquit the defendant altogether, or they may find him guilty of murder in the first degree,

[Brown *v.* Commonwealth.]

or murder in the second degree; and therefore, if you find him guilty at all, you will state in your verdict the degree of guilt.] We submit the case to you, feeling conscious that your verdict, whatever it be, will be according to the law and the evidence. The case has been long and tedious, and no doubt has tried your patience; but we exhort you to give it cool, careful and prayerful deliberation, and render your verdict accordingly. If you should be satisfied that the defendant is guilty, then, under the oath you have taken, it will be your duty to say so; if, however, you are not satisfied beyond any reasonable doubt of his guilt, then you should acquit the prisoner." * * *

The 41st assignment of error was that the judge erred in his charge to the jury. " The parts especially excepted to are enclosed in brackets." So much only of the charge as is necessary to understand the parts excepted to is given.

*G. R. Kaercher* and *J. W. Ryan* (with whom was *F. G. Farquhar*), for plaintiff in error.

*J. B. Reilly*, District Attorney, and *L. Bartholomew*, for Commonwealth.

Chief Justice AGNEW delivered the opinion of the court, July 2d 1874.

On the night of the 25th of February 1872, Daniel S. Kraemer, a farmer of reputed wealth, aged about sixty years, and his wife, were murdered on his farm in Washington township, Schuylkill county. She was found on the next morning lying across her bed insensible and partially undressed, but afterwards became conscious and able to state some of the circumstances of that night, and died on the 4th of March following. Her son, living away from home, who first found her, ran to give the alarm, and on his way discovered the dead body of his father lying at a distance from the house of about three hundred yards. Near him was found a heavy oak club covered with blood and hair. The wounds on the head of both husband and wife were such as this weapon would probably make, and were of a fatal character. The chest, bureau and desk in the house had been broken open, and evidenced that the perpetrator of the murders had been in pursuit of plunder. The only inmate of the house, beside Mr. and Mrs. Kraemer, was her mother, a lady so old, deaf, blind and helpless that she could furnish no information. All the circumstances evidenced that the murders and the search for money were contemporaneous and part of the transaction.

The prisoner has been twice tried and convicted. The first conviction for the murder of Daniel Kraemer was reversed for errors more technical than substantial. The second conviction was for

the murder of Mrs. Annetta Kræmer, and this is the record be-
fore us.

Under these circumstances, before reversing a second time, a
court should feel satisfied a substantial error has been committed.
Of the forty-six assignments of error, only a few present questions
of substance. Many are unsubstantial, others are technical, and
some are unsupported by the requisite evidence. We shall notice
those only we think deserving, and shall group many of them to-
gether.

The first subject of remark are the objections to the jurors. In
Dyott *v.* Commonwealth, 5 Whart. 67, it was held that after a
prisoner stands mute, a plea of not guilty is entered for him and
he participates in the trial and is convicted, the case falls within
the provisions of the Act of 21st of February 1814, enacting that
a trial on the merits, or pleading guilty on the general issue, shall
be a waiver of all errors and defects in or appertaining to the precept,
venire, drawing, summoning and returning of the jurors. This
decision resulted from the language of the Act of 23d September
1791, relating to prisoners standing mute or challenging perempto-
rily more than the allowable number of jurors, that the trial shall
proceed in the same manner as if the prisoner had pleaded not
guilty, and put himself for trial on the country. We do not think
this decision is applicable to a case where the prisoner makes his
objections at first to the panel of jurors, and on their being over-
ruled, takes a proper bill of exceptions; but the decision is strongly
illustrative of the unwillingness of courts to sustain objections to
the jury, grand or petit, after a full and fair trial on the merits.
It is therefore sufficient to say, as to the first and eighth assign-
ments of error to the refusal of the court to quash the array of
the grand and the petit jurors, that the objections of the prisoner
were squarely traversed by the Commonwealth by plea, while the
bill of exceptions contains no evidence of their truth. We must
presume the court had sufficient ground to refuse the challenge.

The second, third, fourth and fifth errors raise the single ques-
tion whether, upon a challenge to the polls of grand jurors, the
prisoner will be permitted to examine them on their *voir dire* to
support his objections. The court was willing to receive other
proof. As to petit jurors, who try the prisoner, and therefore
should be above all exception, the rule is to permit them to be ex-
amined on their *voir dire* to prove objections to their competency.
But the reason does not hold good as to the grand jurors, who do
not try the prisoner, but merely inquire on the evidence of the
Commonwealth alone, whether there is sufficient probable ground
of the commission of the offence charged in the indictment laid
before them. It would be impossible to conduct the business of
the Courts of Quarter Sessions and Oyer and Terminer, if every
person indicted for an offence could claim the right of polling the

grand jurors on their *voir dire* in order to purge the panel. Indictments for murder may be found in the Quarter Sessions and certified into the Oyer and Terminer. A due regard for public policy, as well as for the interests of justice and the nature of the inquiry, forbids that grand jurors should be polled and tried in this manner. If the prisoner have evidence to purge the panel, let him produce it.

6th assignment. That a bill of indictment may be sent up to the grand jury by the attorney-general, or now, by the district attorney, with the sanction of the court, is shown in McCullough *v.* Commonwealth, 17 P. F. Smith 30. It does not appear that the bill before us was sent up surreptitiously.

10th assignment. The 41st section of the Criminal Procedure Act of March 31st 1860, is a summary (say the codifiers) of the 144th, 145th, 146th, 147th and 148th sections of the Act of 14th April 1834, which are left unrepealed: 1 Brightly, note c, p. 385; The venire awarded under 147th section makes no distinction between the bystander and persons in the county at large. Nor does the 41st section of the Act of 1860 make a discrimination. There is no ground, therefore, to support a distinction, and it certainly infringes no rule of right or of policy to hold that, under an order of talesmen, the venire must issue generally and not specially to summon the bystanders only, or specially for persons from the body of the county only. Under the Criminal Procedure Act, the sheriff may summon the talesmen from either or both. The expression, *tales de circumstantibus*, was evidently intended to include both.

The 14th and 15th assignments relate to the evidence of finding the body of Daniel M. Kraemer three hundred yards from the house; the condition of the chest, bureau and desk, and the fact that a large sum in silver and gold was known to the prisoner to be in the house. That the commission of a distinct offence, even similar in character, cannot be given in evidence against the prisoner, was held in Shaffner *v.* Commonwealth, decided at Harrisburg in 1872 (22 P. F. Smith 60). But when two persons are murdered at the same time and place, and under circumstances evidencing that both acts were committed by the same person or persons, and were part of one and the same transaction or *res gestæ*, and tend to throw light on the motive and manner of the murder for which the prisoner is indicted, the case is different. Such was the case here. The club found near to the husband being the probable instrument of the death of the wife also, and the motive, to wit, robbery, being one and the same, which led to the murder of both at the same time. Being parts of the same *res gestæ*, they, together, tend to throw light on each other, and there is no reason that the truth should be thrown out by excluding the evidence objected to.

26 P. F. Smith—22

[Brown *v.* Commonwealth.]

The 16th, 18th, 19th, 21st, 22d, 24th 25th, 26th and 34th assignments relate to the same subject. When we consider that Kraemer was a farmer living in the country remote from a place of safe deposit, and was unused to the ways of men living in town; that it was a period of suspension of specie payments, when silver and gold seek hiding-places in the chests, drawers and desks of such men as he, and often remain hidden for years; we cannot say the time when he and his wife received the coin was too remote, and its possession on the night of the murder impossible. The prisoner was the son of a neighboring farmer, and was without means of his own. The possession of coin and exchanging it for paper-money and purchase of clothing, on the next day, at Pottsville, were significant circumstances, while the evidence of his identity as the person exchanging the coin in Pottsville, might require the testimony of many witnesses and many circumstances to make the proof complete. We discover no error in these assignments.

23d assignment. The fact that a witness was examined in a certain prosecution is a matter independent of the record. He may state that fact as inducement, without producing the record, when the purpose is merely to prove the identity of the person then on trial.

The most important question which arose in the trial was that to which the 28th, 29th and 30th assignments relate, to wit, the admissibility of the so-called confessions of the prisoner to John J. Kaercher. But we meet an insurmountable obstacle to its decision in the fact that the testimony of Kaercher, and of the witnesses called to show the influence used to obtain the confessions, has not been made a part of the bills of exception.

Without the whole of the testimony of these witnesses before us to enable us to sift it and discover the nature and extent of the influence used, it would be very unsafe to say the judge erred in admitting the confessions. We cannot say that he subsequently erred in submitting it to the jury on the evidence, to say whether any improper influence was used, and in charging them, if there were any, that they should disregard the confessions. This did the prisoner no harm, and might, if true, have availed him much. It is proper also to add that the disclosures drawn from the prisoner were rather deductions of certain specific facts than confessions of guilt. It is true that these facts were links in the chain of circumstances to convict the prisoner, and therefore his admissions were to be strictly guarded against any improper influence used to obtain them, but they stand lower in the degree of evidence than actual confessions of guilt. A damaging fact may be admitted without any intention to confess guilt.

The 31st, 32d and 33d assignments relate to the testimony of Joseph Trumbo, who was permitted to testify to conversations with the prisoner through the soil-pipes of the prison. Whether the

[Brown v. Commonwealth.]

voice of the prisoner could be recognised by Trumbo through these pipes, and what weight would be given to testimony, were matters within the province of the jury.

If the offer of such evidence had come from the prisoner, it would have been an error to reject it. *E converso*, it was not error to receive it on part of the Commonwealth.

Speaking-tubes are used in all large hotels and business-houses, and it would be going too far to say, as a matter of judicial knowledge, that the voices of those speaking through them cannot be distinguished.

The 35th, 36th and 37th assignments are defective, in that the evidence is not made a part of the bills of exception.

The offers of evidence distinctly state that the dying declarations of Mrs. Annetta Kraemer were made when she was fully conscious of her approaching death. In the absence of evidence to prove the fact to be otherwise, we must presume that the evidence of her consciousness of approaching dissolution was sufficient as well as satisfactory to the court.

The whole charge is assigned for error. There seems to be no good reason for this. We discover nothing erroneous in the portion commented upon in the argument. The indictment consisted of a single count for murder, and the court told the jury that under it they might either acquit or find the prisoner guilty of murder in the first or second degree, and they should find the degree of murder in their verdict.

The complaint against this part of the charge is, that the court did not instruct the jury that there might be a conviction of manslaughter under the count for murder. The court was not asked to give any instruction on the subject of manslaughter, and for the very good reason that nothing appeared in the evidence on the part of the Commonwealth or of the prisoner, to reduce the homicide to manslaughter. It was a question whether the prisoner was the guilty one who took the lives of this aged couple; but there was no question that the homicide was a foul and devilish murder, committed for the purpose of robbery. It was no substantial injury to the prisoner, therefore, to omit to instruct the jury that, as an abstract principle of law under a count for murder, there may be a conviction of manslaughter.

The other assignments of error need not be noticed. We discover no error in the record, and the sentence and judgment of the criminal court is therefore affirmed, and the record ordered to be remitted for execution.