J-S72001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.D.S., | |
| Appellant | No. 420 WDA 2013 |

Appeal from the Judgment of Sentence January 8, 2013
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001776-2011

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 24, 2014**

Joseph Daniel Scott appeals from the judgment of sentence imposed on January 8, 2013, following a jury trial that resulted in his conviction for Rape of a child (two counts), Involuntary Deviate Sexual Intercourse with a child (four counts), Aggravated Indecent Assault of a child (less than 13 years of age), Indecent Assault of a child (two counts), Aggravated Indecent Assault of a child (less than 16 years of age), Sexual Assault (five counts), Statutory Sexual Assault (five counts), Incest (two counts), Corruption of Minors (two counts), and Endangering the Welfare of Children.[1]  The trial

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Respectively, 18 Pa.C.S. §§ 3121(c), 3123(b), 3125(b), 3126(a)(7), 3125(a), 3124.1, 3122.1, 4302(b), 6301(a)(1), and 5901.

court imposed an aggregate sentence of 60 to 120 years' imprisonment. We affirm.

Appellant raises the following issues on appeal:

I. Did the trial court abuse its discretion on or about June 19, 2012 and at trial in denying [Appellant's] April 3, 2012 pre-trial motion to present at trial the testimony and evidence listed in paragraph 21(B) through (F) and (H) of said motion?

II. Did the trial court abuse its discretion in limiting defense witness David Rundquist, Esquire's testimony in terms of an ongoing child custody dispute and its litigation?

III. Did the trial court abuse its discretion in denying [Appellant's] objections to irrelevant testimony related to prior bad acts by [Appellant] unrelated to this prosecution, including:

A. Testimony by multiple witnesses that [Appellant] viewed and/or made viewable pornography and/or child pornography;

B. Testimony by child witness and cousin K.S. that [Appellant] indirectly permitted children to be provided with alcohol;

C. Testimony by victim K.S. that [Appellant] provided her with marijuana; and

D. Testimony by Tiffany Lyle that [Appellant] asked victim K.S. to expose her breasts?

IV. Did the trial court abuse its discretion in imposing sentences upon [Appellant] aggregating to sixty (60) to one hundred twenty (120) years?

Appellant's Brief, at 4.

Appellant's challenges to the evidentiary rulings of the trial court are governed by the following standard:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002) (quoting

*Commonwealth v. Stallworth*, 781 A.2d 110, 117–18 (Pa. 2001)); *see*

*also Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013).

We have reviewed the certified record, Appellant's brief, the applicable law, and the comprehensive opinion authored by the Honorable John F. DiSalle, of the Court of Common Pleas of Washington County, entered January 11, 2013. We conclude that Judge DiSalle's opinion is dispositive of the evidentiary issues presented in this appeal. Accordingly, we adopt the opinion as our own for purposes of further appellate review.

Appellant also challenges discretionary aspects of his sentence. Such appeals "are not guaranteed by right." *Commonwealth v. Grimes*, 982 A.2d 559, 565 (Pa. Super. 2009). Following our review of the record, we conclude that Appellant has waived consideration of his challenge.

> It is well-settled that issues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.

*Commonwealth v. Oree*, 911 A.2d 169, 172 (Pa. Super. 2006) (citation

omitted). "This failure is not cured by submitting the challenge in a Rule

- 3 -

1925(b) statement." ***Commonwealth v. Watson***, 835 A.2d 786, 791 (Pa. Super. 2003).

At his sentencing hearing, Appellant did not challenge the sentence imposed, requesting only that the court impose concurrent periods of incarceration for several of his offenses. ***See*** Sentencing Transcript, 01/08/2013, at 30. Following sentencing, Appellant failed to challenge any discretionary aspects of his sentence, and his Rule 1925(b) statement did not cure this failure. Thus, Appellant's sentencing challenge is waived. Absent waiver, we adopt Judge DiSalle's disposition of Appellant's challenge to the discretionary aspects of his sentence.

Judgment of sentence affirmed.

Judge Shogan joins this memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2014

- 4 -

IN THE COURT OF COMMON OF PLEAS OF WASHINGTON COUNTY,
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
)
)
v. )   No,   1776 of 2011
)
J.D. S. )
)
)

## OPINION OF COURT

This matter comes before the Court upon Defendant's direct appeal from the Judgment of Sentence dated January 8, 2013, following his conviction, after a trial by jury, on September 21, 2012, of two counts of Rape of a Child Less than 13 Years of Age,[1] four counts of Involuntary Deviate Sexual Intercourse with a Child Less Than 13 Years of Age,[2] Aggravated Indecent Assault of a Child Less Than 13 Years of Age,[3] two counts of Indecent Assault of a Child Less Than 13 Years of Age,[4] Aggravated Indecent Assault of a Child Less Than 16 Years of Age,[5] five counts of Sexual Assault,[6] five counts of Statutory Sexual Assault,[7] two counts of Incest,[8] two counts of Corruption of Minors,[9] and Endangering the Welfare of Children.[10]

1 18 Pa.C.S.A. § 3121(c).
2 18 Pa.C.S.A. § 3123(b).
3 18 Pa.C.S.A. § 3125(b).
4 18 Pa.C.S.A. § 3126(a)(7).
5 18 Pa.C.S.A. § 3125(a).
6 18 Pa.C.S.A. § 3124.1.
7 18 Pa.C.S.A. § 3122.1.
8 18 Pa.C.S.A. § 4302(b).
9 18 Pa.C.S.A. § 6301(a)(1).
10 18 Pa.C.S.A. § 5901.

Clerk of Court
filed
14 JAN 21 AM 11:02



DEFENDANT'S
EXHIBIT
B

## Procedural History

A jury was selected on the above matter on September 10, 2012, and the Court conducted trial from September 17, 2012, to September 21, 2012. At trial, the Defendant was represented by private counsel, Brian Gorman, and the Commonwealth was represented by Traci McDonald and Kristin Clingerman. After the close of evidence and closing arguments, and following deliberations, the jury found the Defendant guilty two (2) counts of Rape of a Child Less than 13 Years of Age, four (4) counts of Involuntary Deviate Sexual Intercourse with a Child Less Than 13 Years of Age, Aggravated Indecent Assault of a Child Less Than 13 Years of Age, two (2) counts of Indecent Assault of a Child Less Than 13 Years of Age, Aggravated Indecent Assault of a Child Less Than 16 Years of Age, five (5) counts of Sexual Assault, five (5) counts of Statutory Sexual Assault, two (2) counts of Incest, two (2) counts of Corruption of Minors, and Endangering the Welfare of Children. The Court ordered that a Pre-Sentence Investigation be completed, and following the Pre-Sentence Investigation, the Court held a sentencing hearing on January 8, 2012. The Court sentenced the Defendant as follows:

1. On the charge of Rape of a Child Less than 13 Years of Age, a Felony of the first degree, with respect to the victim J.S., the Defendant was sentenced to pay the costs of prosecution, and be confined to an appropriate state correctional institution for a period of no less than ten (10) and no more than twenty (20) years. The Court recommended that the Defendant be assessed by the Department of Corrections for mental health issues, alcohol and other drug issues, anger issues, and domestic violence issues and be treated accordingly. The Court further recommended that the Defendant receive perpetrator counseling. The Defendant was given credit for time served.

2

2. On the second count of Rape of a Child Less than 13 Years of Age, a Felony of the first degree, with respect to the victim J.S., the Defendant was sentenced to be confined to an appropriate state correctional institution for a period of no less than ten (10) and no more than twenty (20) years to run consecutively to the sentence on the first count of Rape a Child and under the same terms and conditions.

3. On the charge of Involuntary Deviate Sexual Intercourse with a Child Less Than 13 Years of Age, a Felony of the first degree, with respect to the victim J.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than ten (10) to no more than twenty (20) years, to be served consecutively to the sentences for Rape of a Child and under the same terms and conditions.

4. On the second count of Involuntary Deviate Sexual Intercourse with a Child Less Than 13 Years of Age, a Felony of the first degree, with respect to the victim J.S., regarding the object per vagina, the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than ten (10) to no more than twenty (20) years, to be served consecutively to the sentences for Rape of a Child and under the same terms and conditions.

5. On the third count of Involuntary Deviate Sexual Intercourse with a Child Less Than 13 Years of Age, a Felony of the first degree, with respect to the victim J.S., regarding the penile penetration of her anus, the Court imposed no further sentence as that sentence would merge with Count 2 of Rape of a Child.

6. On the fourth count of Involuntary Deviate Sexual Intercourse with a Child Less Than 13 Years of Age, a Felony of the first degree, with respect to the victim J.S., regarding mouth

3

per vagina, the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than ten (10) to no more than twenty (20) years, to be served consecutively to the sentences for the other charges and under the same terms and conditions.

7. On the charge of Aggravated Indecent Assault of a Child Less Than 13 Years of Age, a Felony of the first degree, with respect to the victim J.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than ten (10) to no more than twenty (20) years, to be served concurrently to the sentences for the other charges and under the same terms and conditions.

8. With regard to the five counts of Sexual Assault with respect to the victim J.S., the Court found, with the agreement of the parties, that those charges merge for sentencing purposes and no further sentence was imposed.

9. With regard to the five counts of Statutory Sexual Assault with respect to the victim J.S., the Court found, with the agreement of the parties, that those charges merge for sentencing purposes and no further sentence was imposed.

10. On the charge of Incest, a Felony of the second degree, with respect to the victim J.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than two (2) to no more than four (4) years, to be served concurrently to the sentences for the other charges and under the same terms and conditions.

11. On the charge of Indecent Assault of a Person Less Than 13 Years of Age, a Misdemeanor of the first degree, with respect to the victim J.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than one (1) to no more

4

than two (2) years, to be served consecutively to the sentences for the other charges and under the same terms and conditions.

12. On the charge of Corruption of Minors, a Misdemeanor of the first degree, with respect to the victim J.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than one (1) to no more than two (2) years, to be served consecutively to the sentences for the other charges and under the same terms and conditions.

13. On the charge of Aggravated Indecent Assault of a Child Less Than 16 Years of Age, a Felony of the second degree, with respect to the victim K.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than five (5) to no more than ten (10) years, to be served consecutively to the sentences for the other charges and under the same terms and conditions.

14. On the charge of Incest, a Felony of the second degree, with respect to the victim K.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than two (2) to no more than four (4) years, to be served concurrently to the sentences for the other charges and under the same terms and conditions.

15. On the charge of Indecent Assault of a Person Less Than 13 Years of Age, a Misdemeanor of the first degree, with respect to the victim K.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than one (1) to no more than two (2) years, to be served consecutively to the sentences for the other charges and under the same terms and conditions.

16. On the charge of Corruption of Minors, a Misdemeanor of the first degree, with respect to the victim K.S., the Defendant was sentenced to be confined in an appropriate state correctional

5

institution for a period of no less than one (1) to no more than two (2) years, to be served consecutively to the sentences for the other charges and under the same terms and conditions.

17. On the charge of Endangering the Welfare of Children, a Felony of the third degree, with regard to both victims J.S. and K.S., the Defendant was sentenced to be confined in an appropriate state correctional institution for a period of no less than one (1) to no more than two (2) years, to be served consecutively to the sentences for the other charges and under the same terms and conditions.

18. The Defendant was also ordered to have no contact with the victims or their family either directly, indirectly, by letter, telephone, social media, or in any other manner.

The Defendant's total aggregate sentence of incarceration was no less than sixty (60) years to no more than one hundred and twenty years (120) years.

Following sentencing, the Defendant filed a Notice of Appeal to the Superior Court of Pennsylvania on February 7, 2013. On February 8, 2013, the Court Ordered the Defendant to file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days.[11] On March 1, 2013, the Court granted the Defendant's Motion for Extension of Time to File Concise Statement and ordered that Defendant file his Concise Statement by no later than March 22, 2013. On March 22, 2013, Defendant filed a Concise Statement of Matters Complained of on Appeal and identified four (4) issues:

I.    Did the Trial Court err on or about June 19, 2012 and at trial in denying the Defendant's April 3, 2012 Pre-Trial Motion to present at trial the testimony and evidence listed in paragraph 21(B) through (F) and (H) of said motion?

---

11 Pa.R.A.P. 1925(b)(2) states, in relevant part: *Time for filing and service.*—The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement.

6

II.    Did the Trial Court err in limiting defense witness David Rundquist, Esquire's testimony in terms of an ongoing child custody dispute and its litigation?

III.    Did the Trial Court err in Denying the Defendant's objections to irrelevant testimony to prior bad acts by the Defendant unrelated to this prosecution, including but not limited to:

    A.    Testimony by multiple witnesses that the Defendant viewed and/or made viewable child pornography and/or pornography;

    B.    Testimony by Child Witness and Cousin K.S. that the Defendant indirectly permitted children to be provided with alcohol;

    C.    Testimony by Victim K.S. that the Defendant provided her with marijuana; and

    D.    Testimony by Tiffany Lyle that the Defendant asked Victim K.S. to expose her breasts.

IV.    Did the Trial Court abuse its discretion in imposing sentences upon the Defendant aggregating to sixty (60) to one hundred twenty (120) years?

## Factual History

Defendant is the biological father of both victims, K.S. and J.S.[12] The victims' mother is S. H., ▮▮▮▮▮▮▮▮ (▮▮▮▮▮▮ "Mother"), who is Defendant's ex-wife, though both victims were born prior to the couple's marriage on May 22, 2000.[13] Victim, K.S., was born on April ● 1995 and was 17 years old at the time of trial;[14] victim, J.S., was born on November ● 1998, and was 13 years old at the time of trial.[15] Defendant and Mother also have a son together, M.S., who was born during their marriage and was 8 years old at the time of trial.[16] The family

---

12 Official Transcript of the jury trial proceedings in the matter, which was conducted before this jurist from September 17, 2012 through September 21, 2012 (hereinafter abbreviated, "TT") Vol. 5, pp. 3-4.

13 TT Vol. 3, pp. 3-5; Vol. 5. p.15.

14 TT Vol. 1, p. 3.

15 TT Vol. 2, p. 58.

16 TT Vol. 1, p. 5.

moved residences several times during the victims' early lives, which included stints in several locations in Canonsburg, Pennsylvania, McDonald, Pennsylvania, Eighty-Four, Pennsylvania, and Washington, Pennsylvania as well as a stay of approximately two (2) years in Oklahoma at the home of the victims' maternal grandmother.[17] Defendant and Mother were divorced in January 2004.[18] However, the couple reconciled shortly thereafter but never remarried.[19] Despite the family's transiency and the parents' divorce, the victims were raised in a home with both of their parents for the overwhelming majority of their young lives, until approximately March 2010, when the Defendant and Mother permanently separated.[20] Testimony at trial revealed that the environment in which the victims were raised, however, was often inappropriate and exploitative.

At the time Defendant and Mother separated, in March 2010, the family lived ▮▮▮▮▮▮ ▮▮▮▮▮▮ in Canonsburg, Pennsylvania.[21] Defendant moved out of the family home into a trailer ▮▮▮▮▮▮▮▮▮, in Washington, Pennsylvania, in which the family had lived earlier during the parents' relationship.[22] The trailer at Terry Way is adjacent to a trailer in which Defendant's mother resides.[23] Immediately following the separation, Defendant and Mother shared custody of their three children informally.[24] Ultimately, as relations between the couple became increasingly strained, father instituted custody proceedings against mother in June of 2010.[25]

Victim K.S. testified that the Defendant began a regular course of sexual assault and

---

17 TT Vol. 1, pp. 7-8.
18 TT Vol. 5, pp. 15-16.
19 TT Vol. 5, pp. 15-16.
20 TT Vol. 5, p. 15.
21 TT Vol. 5, p. 19.
22 TT Vol. 5, pp. 13, 19.
23 TT Vol. 4, p. 128.
24 TT Vol. 3, pp. 13-14.
25 TT Vol. 5, p. 14.

inappropriate contact with her when she was twelve years old, and continued to abuse her until she was sixteen.[26] At trial, K.S. identified several specific instances of sexual abuse. K.S. testified that the earliest instance of abuse she could recall occurred in the family home in Eighty-Four, Pennsylvania, when she was approximately twelve years old.[27] K.S. was in the bathroom shaving her legs and pubic area because she was an active member of a swim team.[28] The Defendant entered, claiming that he needed to use the bathroom. Noticing the K.S. was shaving her genitals, Defendant "told [her] to let him help," then "he spread [her] legs apart and put one of them upon the bathtub."[29] K.S. testified that Defendant then began shaving her genitals and "touching me all over," including "putting his hand down around my clit." [30]  K.S. next recalled an incident in which Defendant came into her bedroom in the family home Burgettstown, Pennsylvania very early one morning.[31] K.S. was "half-asleep, half-awake," and the Defendant entered the bedroom and told K.S. "to let him rub my clit."[32] K.S. told him to "get the fuck away" and threatened to stab him.[33] The Defendant then became very angry and threatened to kill K.S. and her mother if she ever told anyone what he had done.[34]

K.S. testified that on multiple occasions she was awoken by her father masturbating while standing next to the bunk beds she and her sister occupied.[35] When this would occur, J.S. was asleep on the top bunk, and K.S. would be lying in the bottom bunk. K.S. testified that on those occasions,

---

26 TT Vol. I, p. 61.
27 TT Vol. I, p. 10.
28 TT Vol. I, p. 10.
29 TT Vol. I, pp. 10-11.
30 TT Vol. I, p. 11.
31 TT Vol. I, p. 14.
32 TT Vol. I, p. 14.
33 TT Vol. I, p. 15.
34 TT Vol. I, p. 15.
35 TT Vol. I, p. 16.

Defendant would "cum on my bed" when he finished masturbating.[36] K.S. also testified that she remembered occasions where she woke up in bed to Defendant rubbing her vagina over her underwear with a vibrator.[37] Then he would pull her underwear aside and penetrate her with the vibrator.[38]

Defendant also specifically recalled an incident from the summer of 2010, after K.S. and her cousin, K.S. (hereinafter "Cousin K.S."), Defendant's niece, had fallen asleep sunbathing outside of Defendant's trailer ~~in Washington, PA.[39]~~ Both girls were badly sunburned.[40] When they entered the trailer and complained of their burns, Defendant told them to take off their bathing suits so he could rub aloe on them.[41] Though the girls initially refused his offer, Defendant insisted, saying to them "you act like I've never seen boobs before."[42] Ultimately, the girls relented and undressed. Defendant then rubbed aloe on K.S. and Cousin K.S.'s bare breasts.[43] Cousin K.S. corroborated victim K.S.'s account of this incident in her testimony.[44] Neither of the girls told anyone of the incident at the time.[45]

In addition to the specific incidents of sexual contact by the Defendant, K.S. also testified to "constant" touching of her thighs, buttocks and breasts by Defendant.[46] Family friend, Tiffany Lyle, observed that, even as a teenager, K.S. frequently sat on Defendant's lap and that Defendant would

---

36 TT Vol. 1, p. 16.
37 TT Vol. 1, p. 17.
38 TT Vol. 1, p. 17.
39 TT Vol. 1, pp. 34-35.
40 TT Vol. 1, p. 35.
41 TT Vol. 1, p. 35.
42 TT Vol. 1, p. 35.
43 TT Vol. 1, p. 35.
44 TT Vol. 6, pp. 8-11.
45 TT Vol. 1, p. 35; Vol. 6, pp. 11-12.
46 TT Vol. 1, pp. 12, 29.

10

place his hand on her thigh while K.S. did so.[47] Ms. Lyle thought the behavior was odd and not age-appropriate for a father and his teenage daughter.[48] K.S. testified that Defendant frequently smacked her buttocks and grabbed her breasts over her shirt both at home and in public with no regard for who else might be present.[49] She also testified that Defendant "always" found a reason to enter the bathroom during her showers and that she believed Defendant had taken photographs of her with his cellphone while she showered.[50] As a result, K.S. stopped showering in order to avoid Defendant's intrusions.[51]

Defendant also engaged K.S. and Mother in discussions about purchasing a vibrator for K.S., as testified to by both Mother and K.S.[52] K.S. testified that the last time her father had penetrated her was in connection with these discussions.[53] K.S. testified that Defendant sat down on the living room couch on which K.S. was lying and pulled off her sweatpants and "stuck his fingers inside of [K.S.]."[54] While penetrating her vagina with his fingers, Defendant said "he had to know what [K.S.] liked" and "how big [the vibrator] had to be."[55] This incident lasted briefly, as Defendant ceased upon hearing Mother's voice from outside the home.[56]

Ultimately, after the permanent separation of her parents in 2010, K.S.'s prerogative was to live with Defendant in his trailer in spite of the years of sexual abuse she endured.[57] She explained that she chose Defendant's home because she could have "as much alcohol and marijuana as [she]

47 TT Vol. 3, p. 49.
48 TT Vol. 3, p. 49.
49 TT Vol. 1, p. 13.
50 TT Vol. 1, p. 22.
51 TT Vol. 1, p. 23.
52 TT Vol. 1, p. 18.
53 TT Vol. 1, p. 18.
54 TT Vol. 1, p. 18.
55 TT Vol. 1, p. 18.
56 TT Vol. 1, p. 19.
57 TT Vol. 1, p. 64.

11

wanted."[58] K.S. also testified that she had never had a strong relationship with her mother, and, in fact, her mother was verbally and physically abusive to her on several occasions. K.S. said that at the time of the separation, she regularly fought with her mother, and that she preferred having to "fight off" her father's sexual assaults to living with her mother.[59] In March or April of 2011, K.S. moved out of Defendant's trailer and into her Mother's home. K.S. testified that Defendant continued "groping" her throughout the time she lived in trailer ▬▬▬▬▬ with him, recalling that the final incident of inappropriate touching by Defendant occurred sometime before she moved out.

Defendant's youngest daughter, victim J.S., testified to a progressive course of sexual abuse by Defendant beginning when she was five years old and continuing until she was twelve. She testified that he abused her at every home in which the family lived, including the trailer in which Defendant lived after separating with Mother.[60] As early as ▬▬▬ J.S. can remember, the Defendant would "rub [her] vagina."[61] As time went on, Defendant would "put his hands in my pants and grab my boobs and put his mouth on my privates and make me put my mouth on his privates."[62] J.S. ▬▬▬ also testified that Defendant regularly would use a vibrator on her, put his tongue in her mouth when he kissed her, and enter the bathroom when she bathed.[63]

Defendant steadily escalated the abuse to which he subjected J.S. She testified that he made her "suck on it," and then ejaculated into her mouth.[64] J.S. testified that Defendant told her to swallow his ejaculate; when she responded that she did not want to swallow it, Defendant held her

---

58 TT Vol. 1, p. 64.
59 TT Vol. 2, p. 33.
60 TT Vol. 2, pp. 104-108.
61 TT Vol. 2, p. 62.
62 TT Vol. 2, p. 61.
63 TT Vol. 2, p. 66.
64 TT Vol. 2, p. 76.

12

nose and covered her mouth, forcing her to do so.[65] Jocelyn said the ejaculate tasted "like salt." [66] When J.S. was 11 years old, Defendant "put it in her butt."[67] She testified that when she was lying in bed with her father, he told her to pull her pants down.[68] Defendant then proceeded to penetrate her anus with his penis.[69] She testified that the first time he penetrated her anus it hurt and caused her to bleed from her anus.[70]

When J.S. was twelve, Defendant drove J.S. to a lot in Washington, Pennsylvania with an unoccupied home on it.[71] Defendant parked the car and told J.S. to take her pants off. Defendant then unzipped his pants and took his penis out.[72] Defendant then told J.S. to "sit on it."[73] J.S. did what her father told her, and Defendant penetrated her vagina with his penis for the first time.[74] J.S. testified that it hurt when her father penetrated her vagina with his penis.[75] J.S. testified that after her father ejaculated, she asked Defendant, "Why are we doing ---- Why did you put it inside of me?" to which he responded "Because I can."[76] J.S. testified that Defendant had vaginal intercourse with her on approximately three subsequent instances.[77]

After midnight on the morning of June 25, 2011, K.S. disclosed to her mother for the first that Defendant had "touched her."[78] Prior to disclosing to her Mother, K.S. had only ever discussed

---

65 TT Vol. 2, pp. 76-77.
66 TT Vol. 2, p. 76.
67 TT Vol. 2, pp. 67-69.
68 TT Vol. 2, p. 68.
69 TT Vol. 2, p. 68.
70 TT Vol. 2, p. 69.
71 TT Vol. 2, p. 78.
72 TT Vol. 2, p. 79.
73 TT Vol. 2, p. 79.
74 TT Vol. 2, p. 79.
75 TT Vol. 2, p. 79.
76 TT Vol. 2, p. 81.
77 TT Vol. 2, p. 82.
78 TT Vol. 2, p. 14.

Defendant's behavior with one other person, a former boyfriend, N.D.[79] K.S. and N.D. testified to only an oblique discussion of Defendant's behavior initiated by N.D. over concerns with interactions between father and daughter that made him uncomfortable.[80] K.S. testified that she had met with multiple counselors and mental health professionals during a two or three year period directly preceding her disclosure.[81] Several of those meetings and/or counseling sessions were conducted confidentially between only K.S. and a counselor.[82] Although K.S. did not recall if any of those individuals with whom she met specifically inquired as to whether she had ever been sexually abused, she conceded that she had never disclosed that Defendant had sexually abused her.[83] When asked if she would have made such a disclosure if asked directly by any of these counselors or professionals, K.S. responded, that she would not have disclosed as that would have caused her "to lose the one supporter I had."[84]

On the night that K.S. finally disclosed, K.S. and Mother were riding together to pick up Mother's then-fiancé, now-husband, ~~P.H.~~ from work.[85] While en route to pick up ~~P.H.~~ K.S. disclosed. Mother testified that she asked K.S. if she was "150% sure."[86] K.S. testified that she told Mother during their discussion that K.S. was concerned that "somebody had touched" her younger sister, J.S.[87] The next morning Mother contacted Washington County Children and Youth Services ("CYS") seeking advice as to how to proceed in light of her daughter's

---

79 TT Vol. 1, p. 66-68.
80 TT Vol. 1, pp. 67-68; Vol. 6, p. 53-54
81 TT Vol. 2, pp. 3-15.
82 TT Vol. 2, p. 33.
83 TT Vol. 2, p. 33.
84 TT Vol. 2, p. 34.
85 TT Vol. 1, pp. 37-38.
86 TT Vol. 3, p. 21
87 TT Vol. 1, p. 32.

14

disclosure; CYS directed her to take K.S. to the State Police barracks to make a report.[88] On June 27, 2011, Mother and K.S. went to the State Police barracks in Washington, Pennsylvania, where they were interviewed by Trooper Sara Teagarden.[89]

During the interview with Trooper Teagarden, K.S. made several disclosures consistent with her testimony at trial, including, inappropriate touching by Defendant of private areas of her body such as breasts and buttocks both in public and private, inappropriate language by Defendant, and that Defendant touched K.S.'s genitalia.[90] K.S. told Trooper Teagarden about the incident in which Defendant came into her bedroom and asked to touch her genitalia.[91] K.S. also reported to Trooper Teagarden that her disclosure was motivated by concern for her younger sister, J.S., who at the time was the same age as K.S. had been when abuse first began.[92] K.S. expressed concern that Defendant might already have begun abusing J.S.[93] K.S. told Trooper Teagarden about the pornography she had seen on Defendant's computer and cell phone.[94] K.S. reported that she had confronted Defendant to tell him that it was inappropriate to have pornographic material around where her younger siblings easily could access it.[95]

Trooper Teagarden also spoke with mother on June 27, 2011, both in K.S.'s presence and outside of it.[96] Mother informed Trooper Teagarden only of events involving mother, but did not introduce allegations of what Defendant had done to K.S. Mother gave examples of Defendant's use

---

88 TT Vol. 1, pp. 67-68; Vol. 6, p. 13
89 TT Vol. 3, p. 90.
90 TT Vol. 3, p. 92.
91 TT Vol. 3, p. 93.
92 TT Vol. 3, pp. 93-94
93 TT Vol. 3, p. 94.
94 TT Vol. 3, p. 94
95 TT Vol. 3, p. 94
96 TT Vol. 3, pp. 94-95

15

of vulgar language around their children, his possession of pornographic images and material in the family home.[97]

At Trooper Teagarden's recommendation, Mother filed a petition for a Protection from Abuse Order on her on behalf and the behalf of her three minor children on June 28, 2011.[98] The petition alleged that on July 23, 2007, Defendant asked K.S. to "let him rub her pussy."[99] She alleged that Defendant had tried to convince K.S. that it would "feel good," however, K.S. refused and threatened to kill Defendant and tell "everyone what [he] did."[100] Defendant responded by threatening to kill K.S. and Mother, if K.S. ever disclosed.[101] The petition also included allegations that Defendant had inappropriate pictures of K.S. and their children as well as child pornography on his computer.[102]

On July 13, 2011, K.S. went for a forensic interview at the Children's Advocacy Center at the Washington Hospital.[103] The forensic interview was conducted by Jennifer Lytton of Washington County CYS.[104] Ms. Lytton is a trained forensic child interviewer. During her forensic interview, K.S. repeated the disclosures she had made to Trooper Teagarden and further disclosed additional incidents of sexual abuse consistent with her testimony at trial, including waking up to her father masturbating over her and her sister as they slept.[105]

On July 19, 2011, again at Trooper Teagarden's instruction, Mother took K.S.'s younger siblings, J.S. and M.S. to the Children's Advocacy Center at Washington Hospital for forensic

97 TT Vol. 3, p. 95
98 TT Vol. 3., p. 100.
99 TT Vol. 3, pp. 100-101.
100 TT Vol. 3, p. 101.
101 TT Vol. 3, p. 101.
102 TT Vol. 3, p. 101.
103 TT Vol. 3, p. 93.
104 TT Vol. 3, p. 93.
105 TT Vol. 3, p. 103.

interviews.[106] Neither J.S. nor M.S. made any disclosures of abuse during their interviews. In fact, J.S. specifically denied having been touched inappropriately or sexually by anybody. However, late that evening or early into the morning of July 20, 2011, J.S. and K.S. were speaking privately in Mother's home after the rest of the family had gone to sleep. J.S. initiated a conversation with K.S. by asking if anyone had ever touched her. K.S. responded by asking J.S., "Why? Has someone touched you?" Ultimately the girls agreed to count to three and say the name of the person who touched them simultaneously. They both said, "Dad."

J.S. proceeded to detail to her sister the sexual abuse to which she had been subjected to by Defendant. K.S. then ran upstairs to wake Mother. When mother awoke, she asked, "What is it?" to which K.S. replied "I told you. He touched her too, and it's way worse than mine." On the morning of July 20, 2011, a devastated and hysterical Mother called to speak with Trooper Teagarden about J.S.'s disclosures. Unable to reach her personally she left a distraught voicemail.[107] The two finally spoke on July 21, 2011, and agreed that J.S. should submit to another forensic interview the very next day.[108]

On July 22, 2011, Jennifer Lytton conducted the second forensic interview of J.S. at the Children's Advocate Center.[109] J.S. began by apologizing for lying in her previous forensic interview, and then she made disclosures consistent with her testimony at trial.[110] Trooper Teagarden observed the interview through a two-way mirror.[111] At its conclusion, the Trooper went directly back to the State Police barracks where she composed a criminal complaint against

---

106 TT Vol. 4, p. 15.
107 TT Vol. 4, p. 12.
108 TT Vol. 4, p. 14.
109 TT Vol. 4, p. 15-16.
110 TT Vol. 4, p. 16
111 TT Vol. 4, p. 16-17.

17

Defendant and application for search warrant for Defendant's residence at 12 Terry Lane, Washington, Pennsylvania.[112] Defendant was arrested and the search warrant was executed that same day.[113] The police seized several different items capable of containing images, including cameras, a cell phone (on defendant's person), digital memory cards, and an XBOX 360.[114] Searches of those items ultimately revealed no pornographic images. The formal charges were filed against Defendant on July 22, 2011.

After the close of the evidence, closing arguments and following deliberations, the jury returned a verdict of guilty on the charges of:

1.    Rape of a Child less than 13 years of age, a Felony of the 1st degree, with respect to the victim J.S.;

2.    Rape of a Child less than 13 years of age, a Felony of the 1st degree, with respect to the victim J.S.;

3.    Involuntary Deviate Sexual Intercourse with a child less than 13 years of age, a Felony of the 1st degree, with respect to the victim J.S.;

4.    Involuntary Deviate Sexual Intercourse with a child less than 13 years of age, a Felony of the 1st degree, with respect to the victim J.S.;

5.    Involuntary Deviate Sexual Intercourse with a child less than 13 years of age, a Felony of the 1st degree, with respect to the victim J.S.;

6.    Involuntary Deviate Sexual Intercourse with a child less than 13 years of age, a Felony of the 1st degree, with respect to the victim J.S.;

---

112 TT Vol. 4, p. 18.
113 TT Vol. 3, p. 93.
114 TT Vol. 3, p. 101.

18

7. Aggravated Indecent Assault of a child less than 13 years of age, a Felony of the 1st degree, with respect to the victim J.S.;

8. Sexual Assault, with respect to the victim J.S.;

9. Sexual Assault, with respect to the victim J.S.;

10. Sexual Assault, with respect to the victim J.S.;

11. Sexual Assault, with respect to the victim J.S.;

12. Sexual Assault, with respect to the victim J.S.;

13. Statutory Sexual Assault, with respect to the victim J.S.;

14. Statutory Sexual Assault, with respect to the victim J.S.;

15. Statutory Sexual Assault, with respect to the victim J.S.;

16. Statutory Sexual Assault, with respect to the victim J.S.;

17. Statutory Sexual Assault, with respect to the victim J.S.;

18. Incest, a Felony of the 2nd degree, with respect to the victim J.S.;

19. Indecent Assault on a Person less than 13 years of with respect to the victim J.S.;

20. Corruption of Minors, a Misdemeanor of the 1st degree with respect to the victim J.S.;

21. Aggravated Indecent Assault of a child less than 16 years of age, a Felony of the 1st degree, with respect to the victim K.S.;

22. Incest, a Felony of the 2nd degree, with respect to the victim K.S.;

23. Indecent Assault on a Person less than 13 years of with respect to the victim K.S.;

19

24. Corruption of Minors with respect to the victim K.S.;

25. Endangering the Welfare of Children, a Felony of the 3rd degree, with regard to both victims J.S. and K.S.[115]

## OPINION

The Defendant raises four issues for the Court's consideration in this direct appeal from the jury verdict and the Trial Court's Judgment of Sentence. Defendant first challenges the Trial Court's decision to exclude the testimony and records of certain professional counselors with whom the victims had consulted prior to their respective initial disclosures of sexual abuse perpetrated upon them by the Defendant. Specifically, the Defendant argues that the Court erroneously excluded the following evidence and/or witness testimony, as identified in the Motion *in Limine*:

"21. [T]he defense respectfully requests to introduce the following evidence and/or testimony at trial:

B. R. Maureen Myers, Esquire, Child Custody Conference Officer;
C. Steve Miller of Behavioral Dynamics, Inc.;
D. Geith Shahoud, M.D. or an R.N. from Southwood Psychiatric Hospital;
E. Jeanne Hepburn, LCSW, of Cornerstone Care;
F. Melissa Mansberry of Washington Communities MH/MR;

H. June 28, 2011 Protection from Abuse Petition."

With regard to evidentiary challenges, the admissibility of evidence at trial is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting

---

115 The Criminal Information filed in this matter contained two counts of Endangering the Welfare of Children, but due to an inadvertent omission only one count was included on the verdict slip submitted to the jury. Therefore, the Court sentenced the Defendant on a single count of Endangering the Welfare of Children.

20

prejudice, constitutes reversible error.[116] An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.[117] A Trial Court's determination of the admissibility of evidence is to be disturbed on appeal only where there is an abuse of discretion. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."[118] Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice versus probative value weighing which attends all decisions upon admissibility.

The Defendant's stated purpose for calling the witnesses identified above was:

"13. Despite their current claims that they endured ongoing sexual assaults by the defendant for several years prior to said treatment and continuing during the relevant times of said treatment, neither alleged victim made any disclosure to any professional by whom they were treated at said providers.

14. The defense requests to introduce evidence of such at trial, including:

A. the dates of treatment;
B. a description of the conditions of treatment;
C. testimony about the content of any discussion related to sexual abuse history, or of the ability of the alleged victim(s) to make such a disclosure;
D. statements by the alleged victim(s) with respect to sexual abuse, and any other prior inconsistent statements; and

---

116 *Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013); *citing Commonwealth v. Glass*, 50 A.3d 720 (Pa. Super. 2012).
117 *Id.*
118 *Id.*

21

E.   any testimony necessary to respond to cross-examination by the Commonwealth and/or the Commonwealth's case-in-chief.

15.   Juvenile K.S. also met privately with R. Maureen Myers, Esquire, Child Custody Conference Officer at a 2010 child custody hearing, at which she failed to make any disclosures about sexual assault by the Defendant."[119]

With respect to sub-paragraphs 21.C. through F., the Court ruled during the June 19, 2012 hearing on Defendant's Motion *in Limine* that such evidence was inadmissible in the absence of a waiver of the statutory psychologist-patient testimonial privilege.[120] The statute states in pertinent part:

> No psychiatrist or person who has been licensed ... to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client. [121]

Moreover, at trial, both victims conceded that they each had declined to make any disclosure of abuse prior to their respective disclosures in June and July of 2011, despite the fact that there had been multiple opportunities to disclose to various counseling professionals. K.S. went so far as to say that even if asked directly about sexual abuse by a counselor prior to her disclosure to her mother, she would not have disclosed for fear of losing her relationship with her father. The Defendant's stated purpose for the testimony of the counselors was to demonstrate that, despite multiple appropriate opportunities to disclose the abuse while such abuse was still ongoing, the victims did not do so. The Trial Court found that, even supposing such testimony not privileged, it was duplicative of the victims' testimony, and therefore its exclusion worked no

---

119 *See* Defendant's Motion *in Limine* (April 3, 2012).
120 42 Pa.C.S. § 5944

22

prejudice on the Defendant. Furthermore, the Trial Court found that parading several mental health professionals before the jury could result in unfair prejudice to Commonwealth by raising an unsupported inference that the victims were mentally unstable.[122] Ultimately, because the testimony Defendant sought to introduce was privileged, was not being contested and was merely cumulative of the testimony of the victims, the Trial Court committed no error by excluding such testimony.

As for the testimony of Child Custody Conference Officer Myers, even if such testimony is not covered by an applicable privilege, Ms. Myers sworn testimony that K.S. did not disclose sexual abuse to her would be merely cumulative of the victim's admission, and of extremely limited probative value.

As to sub-paragraph 21.H. of Defendant's Motion *in Limine*, the Court granted Defendant's motion as to the Petition for Protection from Abuse Order during the June 19, 2012 hearing on Defendant's motion, provided that it was not used to impeach the victims, as they had not created the document. Additionally, a review of the record indicates that during trial the Trial Court, in fact, admitted that Petition as Commonwealth Exhibit 2, and, therefore, the Defendant's identification of this issue as a component in issue number 1 of the Concise Statement is meritless.[123]

Defendant's second challenge is that the Trial Court erred in limiting the testimony of witness David Rundquist, Esquire, who served as counsel for Defendant in the custody and protection for abuse proceedings between Defendant and ███████ Mother. The Court permitted Attorney to testify as to certain aspects of those proceedings, such as their existence, the fact that

---

121 *Id.*
122 Pa.R.E. 403

23

the proceedings were contested, how and by whom those proceedings were instigated, and the timeline of the custody proceedings as it related to the facts underlying Defendant's conviction. The Court declined to allow Attorney Rundquist to testify to as to the details of the parties' contentions and strategies in connection with the custody and protection from abuse proceedings, or his own opinion regarding the basis for animosities between the parties.

Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[124] But, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[125] The particulars of the custody litigation between Defendant and Mother were of minimal relevance to the matters before the jury regarding the victims' allegations of abuse by the Defendant, such that any probative value to such evidence was so limited as to be outweighed by concerns of confusion of the issues, diversion from the matter at hand, undue delay, and waste of time.

Defendant's third challenge is that the Trial Court erred in admitting testimony by the victims as well as other Commonwealth witnesses as to certain "prior bad acts" by the Defendant. Specifically, Defendant refers to testimony that (1) the Defendant possessed or made viewable pornography, including child pornography; (2) the Defendant indirectly permitted the consumption of alcohol by minors in his trailer; (3) the Defendant provided K.S. with marijuana; and, (4) that Defendant requested that K.S. expose her breasts to him.

---

123 TT Vol. 4, pp. 44-45.
124 Pa.R.E. 401.

24

A long-accepted exception to the general rule of admissibility, which is reflected in Rule

404(b)(1) of the Pennsylvania Rules of Evidence, states that "[e]vidence of other crimes, wrongs,

or acts is not admissible to prove the character of a person in order to show action in conformity

therewith." However, evidence of bad acts is admissible pursuant to our rules of evidence to

prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake

or accident.[126] This list is non-exclusive.[127] Indeed, prior to the codification of our rules of

evidence, the Supreme Court of Pennsylvania set forth the following list of exceptions to the

general prohibition against bad acts evidence:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme,
> plan or design embracing commission of two or more crimes so related to each
> other that proof of one naturally tends to prove the others; (5) to establish the
> identity of the person charged with the commission of the crime on trial where
> there is such a logical connection between the crimes that proof of one will
> naturally tend to show that the accused is the person who committed the other; (6)
> to impeach the credibility of a defendant who testifies in his trial; (7) situations
> where defendant's prior criminal history had been used by him to threaten or
> intimidate the victim; (8) situations where the distinct crimes were part of a chain
> or sequence of events which formed the history of the case and were part of its
> natural development (sometimes called "*res gestae*" exception).[128]

Our Supreme Court has consistently recognized that admission of distinct crimes may be

proper where it is part of the history or natural development of the case or when relevant to

furnish the context or complete story of the events surrounding a crime, *i.e.*, the *res gestae*

exception.[129]

---

125 Pa.R.E. 403
126 Pa.R.E. 404(b)(2).
127 *See Com. v. Brown*, 52 A.3d 320, 325-326 (Pa.Super. 2012); *Commonwealth v. Reese*, 31 A.3d 708, 723 (Pa.Super.2011) (*en banc* ).
128 *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 840 (1989) (citing *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988)).
129 *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 497 (2009); *Lark, supra* at 497; *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964);

25

Here, each of the so-called "prior bad acts" is relevant to providing the full context of the Defendant's sexual abuse of the victims, and specifically the statements made by witnesses other than the victims were directly corroborative of the victims' testimony. Such testimony is admissible to demonstrate the nature of relationship between the victims and Defendant, and that their relationship was such that the charged conduct could have occurred.[130] The multiple allegations of pornography and/or child pornography on the Defendant's computer is especially relevant to understanding victim K.S.'s motivation and decision to finally disclose the details of her sexual abuse to her mother. K.S. testified that after seeing certain images of what she believed to be child pornography on her father's computer, including an image that appeared to have been taken inside Defendant's trailer, she feared that her younger sister might be victimized if she did not take action. After suffering silently through years of abuse, K.S. decided to speak up after seeing pornography on her father's computer. The testimony of witnesses other than K.S. was of probative value to the jury in at least two ways: (1) it described the inappropriate, vulgar and permissive environment in which the crimes took place, and in which victims J.S. and K.S. lived for years, such that they believed that the sexual abuse by their father was "normal"; and, (2) it corroborated the claims of K.S. as to her observations of pornography in Defendant's home.

---

*Commonwealth v. Williams*, 307 Pa. 134, 160 A. 602, 607 (1932); *Commonwealth v. Dorst*, 285 Pa. 232, 132 A. 168 (1926); *Commonwealth v. Coles*, 265 Pa. 362, 108 A. 826 (1919); *Commonwealth v. Haines*, 257 Pa. 289, 101 A. 641 (1917); *Swan v. Commonwealth*, 104 Pa. 218 (1883); *Goersen v. Commonwealth*, 99 Pa. 388 (1882); *Brown v. Commonwealth*, 76 Pa. 319 (1874); *Hopkins v. Commonwealth*, 50 Pa. 9 (1865).

130 *See Commonwealth v. Kubiac*, 379 Pa.Super. 402, 550 A.2d 219 (1988) (admission of testimony at trial for corrupting morals through oral sexual intercourse that defendant and his wife allowed victim and another foster child to smoke marijuana and drink alcohol was not abuse of discretion, where testimony was relevant to demonstrate nature of relationship between victim and defendants as testimony tended to show that their relationship was such that charged conduct could have occurred).

26

The testimony regarding the Defendant's permissive attitude towards the consumption of alcohol and marijuana by his daughters, his niece and other minors also directly describes the circumstances of the sexual abuse of the victims. Specifically, K.S. testified that on a New Year's Eve at the family home in ~~Cannonsburg~~ Cannonsburg, Defendant and victim K.S. were both intoxicated after drinking heavily. When K.S. retired to her bedroom to sleep that evening, Defendant followed her upstairs and touched her vagina with his hands as she tried to go to sleep. Furthermore, K.S. testified that Defendant's lax attitude towards alcohol and marijuana along with his provision of the same to her was a major factor in her choice to move in with her father after her parents separated, despite the fact that she knew that doing so would expose her to further sexual abuse at his hands.

In *Commonwealth v. Kubiac*, the Superior Court affirmed the Trial Court's decision to admit testimony that Defendant and his wife permitted the use of marijuana and alcohol by the victim foster child as well as another foster child in their home, for the purposes of establishing the nature of the victim's relationship with the Defendant and providing relevant context, showing that the alleged acts of oral sexual intercourse could have occurred.[131] Similarly, the Trial Court here exercised its sound discretion to admit the challenged testimony of the prior bad acts to give a more complete understanding of the nature of the Defendant's relationship with his daughters and the character of the home environment Defendant fostered and maintained.

Tiffany Lyle's testimony that Defendant asked K.S. to expose her breasts to him in Ms. Lyle's presence is again admissible as relevant on *res gestae* grounds. Ms Lyle's testimony corroborated K.S.'s testimony of the same event, which supports the critical issue of the victim's

---

131 *Kubiac, supra.*

27

credibility, and provided additional context to the inappropriate environment and exploitative relationship with the victims that Defendant fostered.

Each of the prior bad acts, the admission of which Defendant now challenges, were relevant facts for the jury to consider in assessing the testimony of the minor victims that Defendant abused them routinely for several years. The Defendant is not entitled to a trial in a vacuum. As in *Kubiac*, the Trial Court has exercised its discretion to permit the introduction of evidence of prior bad acts that tend to show the Defendant's behavior and his relationships to his daughters was such that the victims' testimony that Defendant subjected them to years of frequent sexual abuse could indeed have occurred.[132] Crimes of sexual abuse and sexual assault are especially susceptible to a dearth of direct evidence for presentation to a jury, as much of the criminal activity occurs behind closed doors. Here, where the victims are children and the perpetrator is their father, the emotional and power dynamics of that relationship have further obfuscated the matter. Ultimately, the jury was faced with evaluating the victims' testimony of the Defendant's most heinous actions against the Defendant's denials. The admission of third-party testimony to specific instances of inappropriate behavior to which the victims themselves have testified at trial allowed the jury to assess the victims' testimony with greater confidence, since much of it was by its nature uncorroborated. Moreover, the prior bad acts evidence complained of pales in comparison to the horrific sexual acts for which Defendant was on trial. Hearing this testimony of Defendant's prior bad conduct did not so inflame the passions of the jury that they could not reach a fair verdict.

---

132 *Id.* at 409-412

28

Finally, the Defendant avers that the court abused its discretion in the imposition of an excessive sentence on the Defendant by sentencing the Defendant to an aggregate of sixty (60) years to one hundred and twenty (120) years of incarceration.

42 Pa.R.C.P. § 9781 addresses appellate review of sentences. This rule states, in relevant part:

> (c) Determination on appeal. – The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.[133]

In the present case, the total aggregate sixty (60) to one hundred and twenty (120) year sentence imposed by the Court was within the sentencing guidelines and in accordance with the statutory penalties involved. In *Commonwealth v. Wagner*, the Superior Court explained that a claim of excessiveness of a sentence does not raise a substantial question, justifying allowance of appellate review, where the sentence imposed is within the statutory limits.[134] Moreover, the Superior Court has held that an allegation that a sentence on its face was unreasonable and excessive under the circumstances does not raise a substantial question as to the appropriateness of the sentence.[135]

---

133 42 Pa.C.S.A. § 9781.
134 *Commonwealth v. Wagner*, 702 A.2d 1084, 1086 (Pa. Super. 1997).
135 *Commonwealth v. Trimble*, 615 A.2d 48 (Pa. Super. 1992).

29

To the extent the Superior Court decides to review the propriety of the sentence, the Trial Court submits that the total sentence is within the sentencing guidelines. As stated in *Commonwealth v. Walls*:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion ... an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support so as to be clearly erroneous.[136]

A sentence is deemed "unreasonable," "either upon review of the four elements contained in § 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b)."[137]

42 Pa.C.S. § 9781(d) states in relevant part:

(d) Review of record.--In reviewing the record the appellate court shall have regard for:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> (3) The findings upon which the sentence was based.
> (4) The guidelines promulgated by the commission.[138]

Following his conviction, the Defendant was given notice by the Commonwealth of his post-conviction rights. The Commonwealth invoked the mandatory sentences under 42 Pa.C.S.A. § 9718, titled Sentences for Offenses Against Infant Persons, on the charges of two (2) counts of Rape of a Child Less than 13 Years of Age, four (4) counts of Involuntary Deviate Sexual Intercourse a Child Less than 13 Years of Age, and Aggravated Indecent Assault of a

---

136 *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007); *citing Grady v. Frito-Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003).
137 *Daniel*, 30 A.3d at 497; *citing Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007).
138 42 Pa.C.S. § 9781(d).

Child Less than 13 Years of Age, each of which offenses has a mandatory minimum sentence of ten (10) years, and Aggravated Indecent Assault of Child Less than 16 Years of Age, which offense has a mandatory minimum sentence of five (5) years. The Trial Court sentenced the Defendant to the mandatory minimum sentence on both of the counts of the charge of Rape of a Child Less than 13 Years of Age, on three (3) of the four (4) counts of the charge of Involuntary Deviate Sexual Intercourse a Child Less than 13 Years of Age,[139] the charge of Aggravated Indecent Assault of a Child Less than 13 Years of Age, and the charge of Aggravated Indecent Assault of Child Less than 16 Years of Age. The Trial Court imposed consecutively the sentences for Rape of a Child Less than 13 Years of Age, Involuntary Deviate Sexual Intercourse a Child Less than 13 Years of Age, and Aggravated Indecent Assault of Child Less than 16 Years of Age, while the ten (10) year sentence for Aggravated Indecent Assault of a Child Less than 13 Years of Age was imposed concurrently to the other sentences.

For each of the charges of which the Defendant was convicted that neither merged with other charges nor carried mandatory minimums, the Trial Court sentenced the Defendant within the standard range of the sentencing guidelines. The Trial Court's sentence was reasonable and not the result of any bias, prejudice or ill will. Accordingly, the Trial Court did not abuse its discretion.

In *Commonwealth v. Moury* the Superior Court of Pennsylvania held that the,

[I]mposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the

---

139 On the third count of Involuntary Deviate Sexual Intercourse with a Child Less than the Age of 13, the Trial Court imposed no further sentence, finding that it merged with the second count of Rape of a Child Less than the Age of 13 for sentencing purposes.

31

aggregate sentence is unduly harsh, considering the nature of the crimes as the length of imprisonment.[140]

In addition, the sentencing court has broad discretion in determining the length of sentence because, "the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it."[141]

As set forth on the record, after taking into account the sentencing guidelines, and after consideration of the nature of the offenses and the impact on the victim and community as required under 42 Pa.C.S. § 9721(b), the Trial Court imposed Defendant's sentence of a total of sixty (60) to one hundred and twenty (120) years, squarely within the sentencing guidelines, and, therefore, Defendant's sentence was appropriate, and not manifestly unreasonable. The Trial Court submits that for the above-stated reasons it did not abuse its discretion in imposing Defendant's sentence.

For the reasons set forth above, the Trial Court respectfully submits that the verdict of the jury should be upheld, and that the Judgment of Sentence should be affirmed.

DATE:

1/17/14

BY THE COURT:

_____, J.
John F. DiSalle

---

140 *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010); *citing Commonwealth v. Pass* 914 A.2d 442, 446-47 (Pa. Super. 2006).
141 *Walls*, 926 A.2d at 961; *quoting Commonwealth v. Ward*, 524 Pa. 48, 568 A.2d 1242, 1243 (1990).

32